May it please the Court, Davina Chen for James Wilkinson. I would like to try to reserve two minutes for rebuttal. This case raises two issues, a search issue and a sentencing issue. I'd like to start briefly with a search issue because I think it's very strong and I don't want it to get lost in the shuffle of the big ACCA issue. The search in this case was legal only if the officers had probable cause to believe on December 1st that Mr. Wilkinson was living in his girlfriend's apartment. They did not. This case really rises and falls on the government's claim that his girlfriend's statement two months previously gave the officers probable cause. It did not. Well she told him two months before that they were together but then didn't he also have a key to the apartment? He did not have a key to the apartment. She told them two months previous that they were together but that they would be moving out in two days. So it was a requirement for the officers to confirm that he was actually and still living there on December 1st before the search could fall within the DOC compliance search conditions. The district court as I recall held that it credited the girlfriend's testimony correct? Actually the district court credited the officers excuse me the officers testimony about what they understood. So would we need to determine that that was a clear error finding in order to hold for you? No because what the officers said that she said three months earlier was that they were living together but they would be moving out in two days. The search did not occur until two months later. So it was incumbent upon the officers to confirm that he was actually and still living there and they they did not just go and search the apartment. They tried to. They asked a task force officer who to see if cars that they thought were Mr. Wilkinson's were there and over a two-month period cars that they thought were his were seen at the apartment a total of three times. Three times in two months. That is not living somewhere and when they went to surveil the apartment on those three occasions where a car that was reportedly Mr. Wilkinson's they never confirmed it with his. They never saw Mr. Wilkinson. So let's be clear this is a search of an apartment based on the allegation that it was Mr. Wilkinson's residence when no officer ever saw him there. Now they did attempt to confirm with the apartment manager that he lived there but she didn't say so either. So this is in sharp contrast to Mr. Wilkinson's supervising officer Mr. Pica who regularly and repeatedly had contact with Mr. Wilkinson and never once suspected that he was not living as reported in Auburn. He met with him every month. He spoke to him frequently about his domestic violence and drug treatment programs. He visited that motel numerous times. The motel manager repeatedly told him yes he's living here. In fact twice after the girlfriend allegedly said that Mr. Wilkinson was living in Tacoma. Twice when CCO Pica went to the motel the motel manager said oh yeah I saw him here today. And as recently as two days before the search in Tacoma the motel manager said yes he's still staying here. So this case is in sharp contrast from to the cases that the government relies on. They rely most heavily on a case. So is it your position that he can only have one residence? No. I mean what if the I mean the testimony could support the fact that he was actually living in two places and spending half his time there and half his time in the other place. Sure but the evidence is no stronger that the Tacoma apartment is one of his two residences than it was his only residence. Well I mean there there is I mean the evidence that you've recounted there is some evidence to support the belief including I guess most strongly the fiance's statement that they were living together. That they were living together and that they were moving out in two days. Well true but if they're still seeing his car at the complex more than two days later couldn't they also conclude that they hadn't yet moved out? First of all they never confirmed it was his car. The apartment manager. They know the cars were associated with him. They say that they had a confidential informant who reported those cars being associated with him and this confidential informant said that it was a white f-150 pickup whereas the I'm not sure what what fiance is. But did the officers then go to the apartment complex and find a white Ford f-150 pickup? Three times in two months. Well but why doesn't that corroborate the information that the informant gave to the police? In Granbury the officers saw the individual enter an apartment by himself with a key six to ten times. You're not you're not answering my question. It corroborates that perhaps Mr. Wilkinson was visiting Miss S.C. Well or that he was still living with her at that location. Three times in two months. Well I mean why else would the car be there? Because he was visiting her. This court has been very clear. They were living together so how did we get from living together to just visiting? She said that they were living together two days. But apparently they hadn't because his car was still there. His car was there three times in two months your honor. This court is very clear. I guess what you and I are where we we differ is whether or not the surveillance coupled with the information that they had from the informant and from the fiance is sufficient to give the officers probable cause to believe that he was living at that location. Isn't that what this is? That is exactly what we're talking about and I would argue that the surveillance actually contradicts that. Well to go back to go back to Judge McEwen's question if these are sort of intensely fact-bound determinations don't we have to declare that the district court was clearly erroneous when it concluded based on this evidence that that they had corroborated that he was still there? This court reviews probable cause de novo. So the factual findings. Well it's a mixed question of law and fact is it not? Yes. Reviewed de novo. This court has never held that. Counsel it's a two-step process. First we have to determine whether or not there was clear error in the underlying factual findings and this is an intensely fact-driven determination. Then we apply the law de novo to determine whether as a matter of law those facts if credited would establish probable cause. Isn't that the test? I agree that that's the test and I would argue that even if you accept every single fact that the that Miss S.C. said this two months previously that they saw his car three times in two months that they were there was constant contact at the Auburn Motel. Even if you accept every single fact that the government alleges it's still not probable cause under a de novo review. Do you want to turn to the camps issue? I do want to turn to my advocacy because it looks like I'm already at. Turning to the sentencing issue this court doesn't even need to reach the the offense was violent because it was not punishable by more than one year. Well how do you how do you interpret Washington State's sentencing statute? The statute is punishable by 10 years or 20 years imprisonment is it not? By 10 years absolutely. But under Caracciurri-Rosendo and Moncrief we have to look at what facts were established by the record of conviction. Well let's first deal with the law. There's another statute that then establishes a standard sentencing range but the law also provides that the superior court judge can impose an extraordinary sentence above or below that range if the court articulates reasons to do so. Isn't that what the law says? Correct. And the court did not. So why is that statute not punishable by imprisonment for more than a year? The statute is punishable by imprisonment by more than 10 years. This crime as punished in this case was not punishable by more than one year. Doesn't that do exactly what the Supreme Court told us not to do in DeKalb? I thought this was a categorical analysis not a fact driven analysis. It does exactly what the Supreme Court said to do in DeKalb which is to look at what was established by the record of conviction. And in this case the record of conviction establishes Washington residential burglary is a level 4 offense. Mr. Wilkinson was criminal history category 1. He had no priors. The sentencing range was 6 to 12 months and the judge found no exceptions. But the statute. Go ahead. Where I get stuck is that it seems to me that that's exactly what we're not supposed to be doing which is we're looking at a case by case basis as you know and even in the federal sentencing guidelines there's a possibility for downward departures and all kinds of things that could have happened. But we're looking at by what is the crime punishable by. And that's where it seems to me and I appreciate your comments that you cite some cases from I think it's Kansas and North Carolina. But those systems were different. And here this crime is punishable by the fixed amount that Judge Tolman talked about. So I'm still having trouble fitting your argument into DeKalb and the fact that it's different from those cases. I don't think it is different from North Carolina and Kansas. I looked carefully last night at North Carolina and Kansas' sentencing structures. Each one of them has a standard range. So in North Carolina they have a mitigated range, a standard range and an aggravated range. In order to get sentenced in the aggravated range the judge needs to make an extra finding. And so several courts, the fourth and now it looks like the fifth also and the Solicitor General has conceded that under the North Carolina statute the maximum for the purposes of this analysis is the top of the standard range. So that somebody could be punished by more than a year, just not the same sort of system. There's a standard range. And if the judge finds facts to go above the standard range they can go up to twice the standard range. They have this rule called the double rule and then they have the double double rule. But we're just talking about the double rule. So if a judge makes a finding that an aggravated sentence is warranted the court can go above. Up to 20 years. Up to, in that particular case. No, no, no, in Washington if the court decides to impose an extraordinary sentence it can impose that sentence up to 20 years. Up to 10 years in this case, that's correct. But the judge did not make that finding. And what Moncrief and Carachuri-Rosendo tell us is we're not supposed to hypothesize. Perhaps if the judge had made a finding he could have been sentenced up to 10 years. We're supposed to look at the actual sentence. If the court imposes that extraordinary sentence it must simply tell the court of appeals why. There is a finding required. Washington law is very clear that they must find something that is not an element of the offense. In State v. Gore the Washington Supreme Court was very clear you cannot impose an aggravating sentence based on an element of the offense or something that went into the standard range. So in order to get an aggravated sentence the court must make a finding. That's what Blakely was about. Now I'm not saying this is a Blakely case, but Blakely interpreted the law of Washington. Okay, you're running out of time. Let me ask one last question. The time issue is a tricky one. But if you have a statute that's overbroad and is not divisible, if we agreed with you on that point this whole one year wouldn't matter, right? That's correct. Good morning. May it please the court, my name is Helen Bruner. I'm here to represent the United States. Let me start very briefly with the suppression question because I think it's important to address a couple of factual issues. I think it's important to address the factual issues that I think are clear from the record and were not clear as a result of the discussion here this morning. First of all, we did have the probable cause is based on the statement of S.C. to the officers on September 28th. But that probable cause is also corroborated. It's corroborated by the fact that the manager very clearly says to the officers that she still lives there when they investigate in November of 2011. And that Mr. Wilkinson had paid rent in cash on several occasions when she was late in the rent. It also is clear from the record that the officers started their surveillance of the Brookside Apartments, which was searched in November of 2011. So it was one month. And on three occasions they saw cars that the, or I should say the trucks that were parked in the SUV that the informant said was associated with Mr. Wilkinson in the parking lot. They did run the plates. The plates come back to Enterprise Rental Car and we know, and they knew from the informant that he was renting cars from Enterprise Rental Car. So, and with respect to Mr. Pica's observations, what the court had in front of it was not the testimony of Mr. Pica but rather his supposition of what he might believe to be true. There's no doubt that Mr. Wilkinson was paying for rent at the motel in Auburn. But it's also equally conceivable that the manager saw him there when he came to pay rent or came to establish that he might still have a residence there so that he could show his probation officer he was complying with the obligation to remain, to live there in King County and remain in King County. So I think the facts in this case based primarily on her SC statements and then the corroborating evidence is more than enough to establish probable cause that he was living and staying at that residence in Brookside. So moving from Auburn to Tacoma would have also been in violation of his probation condition? Exactly. The condition... And I apologize for not pointing that out. So with respect to the second issue, I... Could I ask you on the second issue, it's very logical to start with the one year. Could you start with the second part of it and that's whether this is a divisible statute and whether it's overbroad? Your Honor, I do think it's a divisible statute and let me start then there under DeCamps. And I do, I think I have said to several people, I think this is a, the issue of divisibility is becoming more complex and it makes my head hurt when I think about it. But I think this actually does satisfy it for a couple of different reasons. I think the arguments sort of break down into two places. With respect to the fact that this is a statute that, like the generic burglary set out in Taylor, makes it a crime to illegally or unlawfully enter a residence and unlawfully remain in a residence. Yes, the Washington courts cited by counsel in particular state versus Collins does talk about the fact that the state courts do talk about whether or not there needs to be a unanimity instruction, but when you look at Collins, what, or not Collins, I'm mixing up my two state cases, but in any event, what the state courts have said is if there's insufficient evidence as to the two alternative means, then there needs to be a unanimity instruction. And when the cases of the state's, state court that are cited in the briefing are unanimous. What they've also made clear is that where someone has unlawfully entered and then remains within to commit the crime, they've also unlawfully remained. So as a practical matter, those two things often go hand in hand, which is why the court had not, the state courts have not required the unanimity instruction unless the government has charged it in that way and cannot prove both things. Well, let me turn to a recent case of Rendon. And in your brief, as I read it, you were characterizing this unlawful entry and unlawful remaining as means as opposed to elements. And now we have Rendon, which basically says that it's black-letter law that a statute is divisible only if it contains alternative elements. So how do you square the statement in your brief with what Rendon now tells us is absolutely clear? I think I would respond to that, Your Honor, by saying that means, and pointing to the language actually in DeCamps where Justice Kagan talks about means and elements and whether means and elements have some interchangeability. I think here, whether you label it as means or elements, you have to prove, to establish burglary of a residence or residential burglary under Washington law that someone either entered illegally or remained illegally. And as I explained, in many cases, it's both, because they break, they enter, they remain, and then they leave. True. When I was in law school, I represented these people who went to the White House on a tour, and then they didn't leave. And they were charged with unlawful entry, of course. So that's kind of the kind of statute that we have here. And I haven't quite heard an answer as to why in your brief it's characterized as one thing and Rendon as another. But it actually makes clear there is a difference between elements and means. So why isn't the means by which you can have unlawful entry alternative means, but not elements? Well, I mean, the Supreme Court has put us in this with DeCamps and all of its cousins. So we are splitting hairs, I realize, but there are hairs that need to be split. I agree, Your Honor. I think perhaps we used a term, let me perhaps answer the question this way. When you're saying alternative elements, and if I understand correctly, where Rendon is taking us, it's effectively saying if you have two separate crimes charged in the statute. If you can show that these are alternative elements of the same crime, not that you'd need both of those elements. Well, to take Judge McEwen's clinic case, wouldn't the jury in Washington State have to be instructed that it would have to determine by unanimous vote whether it was either an illegal entry or an illegal remaining in the White House in order to convict? For burglary under the Washington statute? As I understand Washington law from having attempted to parse through the cases. And I think part of, I mean, I'll be honest, I think part of the problem is that most of the cases, there is no question that both things come together, which is why I think the case is. Well, that's why I gave you my case. Because, you know, you can go, and you can go into, there's a lot of situations where you could go in legally and you could extend where you are in a place, or you could be invited in but then asked to leave, a shopping center. So I don't think it's a hypothetical in real life. I don't mean that it would be. I think what I'm attempting to say here is that when the courts in Washington State are talking about when you need a unanimity instruction, they were clear that if the evidence was sufficient to prove both an unlawful entry and an unlawful remaining, that no unanimity instruction was necessary. But if there was insufficiency as to one or the other. It's a no-brainer if the guy breaks his way into a residence at night and then remains within to steal things. It's a harder question with regard to did he enter on a tour of the White House and then decide to stay after the tour guide took the rest of the people out and they closed the White House for the day. And as I understand Washington law, in that instance, you would need to instruct the jury on unanimity with respect to what his intent was at the entrance versus what he had in mind when he remained. Exactly. Exactly. And I think Collins also makes that clear that if someone enters lawfully, but then stays beyond the point at which the invitation to come in permitted. So, for example, in Collins, the invitation to come in to use the telephone and then remaining therein was in violation of the statute. And that would have required what was considered unlawfully remaining. Now, counsel, we are running out of time, but I did want to get back to the one-year question. Is it your position that the various cases that Ms. Chan has cited from the Fourth Circuit and the Eighth Circuit and the Sixth Circuit and the Tenth Circuit, that those cases are legally correct, but that the Washington law is just different than those states? Or is it your position that those cases are wrong because of the dissents, for example, in those cases? Well, the government's position is that Washington's statute is just different. In Simmons, the North Carolina statute makes clear that the judges did not have discretion to go above one year. Under those circumstances, once you did the calculation, once you looked at the criminal history and the other factors in the statute, you could not exceed if the calculation then resulted in one year. You could not exceed it. That's what the fundamental difference here is. Washington law allows the court discretion, certainly at the time that Mr. Wilkinson's conviction took place in 1994. We didn't have Blakely yet, so the question was not even whether or not there needed to be a jury finding in any way, shape or form. The court simply had discretion, and the factors that are listed in the statute are not exclusive factors. So they're just simply not analogous statutes. And for that reason, I would suggest that Simmons and Brooks simply are not controlling here, that they're very different. Final question on the topic from me. Because the district court never analyzed the one-year question under the cases we've just been discussing, what would the harm be for us to remand this question, if we need to reach the one-year question, to the district court to consider anew what Washington law is, why is it the same or different than North Carolina? Because I don't think there's really been, there hasn't been a lot of briefing at all on this question. No, it was not raised in the district court. I mean, I think this court could decide it if it wanted. It could also, I suppose, remand it to the district court on an open record and allow us to re-litigate all of this. Those are, I think, the choices that the court has. I do think it is a legal issue. Thank you. Okay, one second on the one-year issue. The government cited HAARP in its brief, implicitly acknowledging that the North Carolina statute and the Washington statutes are analogous. They cited HAARP as their authority. Let me move to the divisibility issue. I think after Rendon, the court has identified it's perfectly clear that juror unanimity is the requirement to determine whether a statute is divisible. And I think I heard the government counsel concede that jurors are not constructed in Washington state, but they need to be unanimous as to unlawfully entered or unlawfully remained in. No, no, I think you misunderstood. It depends on what the prosecution has charged in the information with respect to the facts supporting the burglary charge. So in this case, they charged both unlawfully entering and remaining. And I don't think we can look at the facts. I think that is exactly where this court got off track on Aguilar Montes de Oca, where they said, well, if you look at the facts and you can determine, based on the theory of the prosecution's case, that it really was one or the other, then we're okay. We can look at the facts if it favors the defendant, but we can't look at the facts if we're trying to apply a categorical approach to the statute. I don't believe we can look at the facts in the Rendon issue. I think that the Supreme Court and this court are very clear it's elements that matter, not facts. And I think that that's consistent both in the one-year rule and this rule. In either event, we have to look at what was actually convicted. And we have to look at what was brought. It's undisputed that it was brought. Okay, we have, I think you're repeating yourself now, and we have your argument in mind. So I want to thank both counsel for both the briefing and the argument. It's very interesting questions. The case of United States v. Wilkinson is submitted.
judges: McKeown, Tallman, Owens